## Case No. 8,248.

### LENOX v. WINISIMMET CO.

[1 Spr. 160; [1] 11 Law Rep. 80.]

District Court, D. Massachusetts. May, 1848.

COLLISION — DARK NIGHT — CROWDED HARBOR—
COMPASS—VESSEL AT ANCHOR—NO LIGHTS
—BOTH IN FAULT.

1. It is culpable negligence in a ferry boat, to run on a dark night, through a crowded harbor, relying solely on a brass compass, which would not traverse so well as a lighter one, which was on board at the time.

2. By the maritime law, a vessel at anchor, in a thoroughfare, in a dark night, is bound to exhibit a light.

3. In a case of collision, both vessels being in fault, the aggregate damage and costs were equally divided.

[Cited in The Mary Patten, Case No. 9,223; The City of Hartford, Id. 2,750; Vanderbilt v. Reynolds, Id. 16,839; The Pennsylvania, 15 Fed. 817.]

In admiralty.

SPRAGUE, District Judge. The schooner Tiberius, while lying at anchor between East Boston and the navy-yard at Charleston, was, at about 10 o'clock p. m., on the 8th of September last, run into by the steamer Winisimmet, plying as a ferry boat between Chelsea and Boston.

The first question is, what was the position of the Tiberius? Upon this point there is a distressing and irreconcilable conflict of evidence, and the best conclusion at which I can arrive is, that she lay somewhere from three hundred to five hundred feet from the edge of the channel at East Boston, and from five hundred and fifty to seven hundred and fifty feet from a straight line, drawn from the ferry-ways in Chelsea to the ferry-ways in Boston. The Tiberius came to anchor, at that place, between 7 and 8 o'clock a. m., on the 8th, and lay there during the day, in full view of the steamer. To repel the inference of negligence from the Winisimmet's being so far from her usual track, it was proved by the respondents that the night was extremely dark, from clouds and fog, so that the boat, for the greater part of the distance, could be steered only by the compass; that there was very little wind, not exceeding a three-knot breeze, the water smooth, so that the compass would not traverse quickly, and the boat might vary her course from one to two points, before the compass would indicate a change in direction; and also, that the varying currents setting up the harbor, and into Charles and Mystic rivers, increased the difficulty. The steamer had two compasses, a brass and a wooden one. At the time of the collision, she was passing from Chelsea to Boston, and was steered solely by the brass compass; and it is proved by the testimony of Captain Reed, who commanded her at the time, that this did not traverse so well as the wooden one.

Considering the darkness of the night, the difficulties of navigation, and that there were vessels lying at anchor on both sides of the usual track of the steamer, and that those off the navy-yard were so near as to compel her to deviate from a straight course, I think she must be holden to the utmost care and vigilance, and that the omission to make use of the lighter compass, which was best adapted to the occasion, and which would have been the quickest to exhibit a deviation from the proper direction, and most likely to indicate her true course, must be imputed to her as culpable negligence.

The next question is, whether the Tiberius was also in fault. Between 7 and 8 o'clock, the officers and crew all turned in for the night, leaving no light. The general rule of the maritime law is, that a vessel lying at anchor, in a channel which is a thoroughfare, which other vessels have frequent occasion to pass, is bound to exhibit a light, when the night is dark. The Scioto [Case No. 12,508]. See the authorities collected in 1 Pars. Mar. Law, p. 192, note 3, and the following additional cases: The Mary Campbell, Stu. Adm. 225, note; The Miramichi, Id. 240; The Dahlia, Id. 242; Nelson v. Leland, 22 How. [63 U. S.] 54; The Louisiana, 21 How. [62 U. S.] 1.

By the evidence in this case it appears, that there is no uniform custom in Boston harbor, as to keeping a light. The larger vessels, and those engaged in the foreign trade, generally do so; but the eastern coasters, the class to which the Tiberius belonged, generally do not. Mariners have given different opinions, on the stand, as to the prudence or imprudence of a vessel lying without a light, in the position of the Tiberius. Most of the ship-masters and all three of the pilots who have been introduced, have strongly expressed the opinion that it was imprudent for a vessel to lie in that place, without a light; and considering that the Tiberius lay in the channel, at a place where, or at least very near which, vessels have frequent occasion to pass, and that she had seen the steamer plying as a ferry boat, during the whole day, and ought to have known that her usual time of running extended beyond the time of collision; and considering also the extreme darkness of the evening, I think it was not justifiable in the officers and crew of the Tiberius to go to rest for the night, exhibiting no light, and leaving no person on deck.

Both vessels, therefore, were guilty of negligence; and the rule in the admiralty in such cases is, that the aggregate damage to both shall be divided equally between them, as was decided by this court in the case of The Rival [Case No. 11,867]. As to the costs, each party will be decreed to pay one-half.

---

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]